Blake Lindemann (SBN 255747)
Attorney-At-Law
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile: (310) 279-5240
E-mail: Blake@lawbl.com
[Proposed] Counsel to Allged Debtor
*1019 South Central Associates, LTD.*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>1019 SOUTH CENTRAL ASSOCIATES, LTD, a California Limited Liability Partnership,<br><br>Alleged Debtor. | Case No. 2:11-bk-17360-BB<br><br>**Chapter 11 Proceeding**<br><br>**NOTICE OF MOTION AND MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 11 PURSUANT TO 11 U.S.C. SECTION 706(a) AND REQUEST TO CONTINUE THE AUTOMATIC STAY AS TO REAL PROPERTY; DECLARATION OF MANUEL MEZA**<br><br><u>Hearing:</u><br><br>Date: TBD<br>Time: TBD<br>Place: 255 E. Temple St.<br>       Los Angeles, CA 90012<br>       Courtroom 1475 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that 1019 South Central Associates, Ltd.(the "<u>Debtor</u>") hereby moves the Court For An Order granting its Motion to Convert Chapter 7 Case To Chapter 11 pursuant to 11 U.S.C. Section 706(a) and Local Bankruptcy Rule 1017-1 and Request To Continue The Automatic Stay In Chapter 11 Case As To Real Property (the "<u>Motion</u>").

1  **PLEASE TAKE FURTHER NOTICE** that this Motion is based on the following Memorandum of Points and Authorities, the Declaration of Manuel Meza attached thereto, the pleadings, argument and evidence on file with the Court in this case, and on such other and further matters as the Court may allow. In addition, the Debtor requests the Court take judicial notice of all documents filed with the Court in this Case.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held at a date and time scheduled by the Court, before the Honorable Sheri Bluebond in Courtroom 1475, 255 E. Temple St., Los Angeles, CA 90012.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion, you must appear at the hearing hereon and file and serve any responsive pleading in accordance with the deadline set forth in a notice of hearing to be served upon you at a later date. Additionally, Local Bankruptcy Rule 9013-1(f) provides that the failure to timely file and serve an opposition or response may be deemed by the Court to constitute consent to the relief requested.

**WHEREFORE,** the Debtor request that the Court enter an Order Granting the Motion, and granting such other and further relief as it deems necessary and appropriate.

Dated: April 4, 2011

_____
Blake Lindemann

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

On February 22, 2011, an involuntary Chapter 7 petition (the "Bankruptcy Case") was commenced against 1019 South Central Associates, LTD (the "Debtor") by Vicente Garcia, Fernando Ruiz, and Toshio Kato (collectively the "Petitioning Creditors"). No Trustee has been appointed, and no motion to appoint a Trustee has been filed.

The Debtor has retained counsel a short time ago, and counsel is getting up to speed concerning the matter. The Debtor apologizes for the late nature of this Motion to Convert. The alternative is dismissal and a re-filing by the Debtor. The Debtor has only recently learned of its options and alternatives concerning the matter.

The purpose of the Debtor's reorganization will be to value liens attached to Debtor's real property located at 1716-1724 Naud Street, Los Angeles, CA 90012 ("Real Property"), pay secured claims based on what the Bankruptcy Code will allow, and make a distribution to unsecured creditors pursuant to a Chapter 11 Plan. In addition, the Debtor will pursue its litigation claims, likely in state Court.

Because secured creditors and unsecured creditors will receive a distribution pursuant to the Debtor's reorganization plan, converting the case is in the best interests of creditors. Because the Debtor will be able to retain property and pursue litigation it has invested hundreds of thousands of dollars in, the conversion of this Chapter 7 case is in the best interests of the Debtor. Accordingly, converting this case to Chapter 11 is fair, equitable, and in the best interests of the estate. The Debtor has never commenced a voluntary petition.

The Debtor also maintains the automatic stay should continue as to Real Property. The principal basis for a motion for relief from stay filed by David L. Brady and Robert Karns, M.D., as Co-Trustees of the Leo Bortz Testamentary Trust (collectively the "Secured Creditor") is that the involuntary petition was allegedly filed in bad faith and in collusion with the Petitioning Creditors. However, Petitioning Creditors have informed the Debtor that their basis for the filing was that if the Real Property was sold at a non-judicial foreclosure sale, no constituencies in this case would

recover. The filing was not part of a scheme. A bankruptcy happens to benefit both the Debtor and Petitioning Creditors here.

II. **ARGUMENT**

A. **The Debtor Has An Absolute Right To Convert Its Chapter 7 Case To Chapter 11 Because The Debtor Is Eligible To Be A Chapter 11 Debtor**

Title 11 §706(a) states: "[A] debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." The debtor's right to convert its case from chapter 7 to chapter 11 is an almost unfettered one. In fact, many courts have found that a debtor has an automatic right to convert. *See In re Croston*, 313 B.R. 447 (B.A.P. 9th Cir. 2004); *In re Miller*, 303 B.R. 471 (B.A.P. 10th Cir. 2003); *In re Pequeno*, 126 Fed. Appx. 158 (5th Cir. 2005; *In re Rossen,* 2000 WL 34448606 (Bankr. D. Vt. July 11, 2000) (Case No. 99-10383).

Such an interpretation is supported by both the plain language of the statute and its legislative history. Congress intended § 706(a) to confer "the one-time absolute right" to convert from liquidation to reorganization, because "the debtor should always be given the opportunity to repay his debts." S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5880; H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6336.

The text of the Bankruptcy Code restricts a Chapter 7 debtor's conversion right in two—and only two—ways. First, § 706(a) makes clear that the right to convert is available only once: A debtor may convert so long as "the case has not been converted [to Chapter 7] under section 1112, 1208, or 1307 of this title." Second, § 706(d) provides that a debtor wishing to convert to another chapter must meet the conditions that are needed in order to "be a debtor under such chapter."

Conversion can also be constricted restricted, at least in a Chapter 7 to Chapter 13 context, if there is a pattern of bad faith by the Debtor to avoid a Trustee's efforts to maximize value for the estate. In *Marrama v. Citizens Bank of Massachusetts*, the Supreme Court held that a Chapter 7 Debtor could not convert his case to Chapter 13 because the

BLAKE LINDEMANN
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

Case 2:11-bk-17360-BB    Doc 14    Filed 04/04/11    Entered 04/04/11 19:40:21    Desc
Main Document    Page 5 of 16

Debtor misled the Trustee about certain assets and their values and the Debtor did not qualify for Chapter 13 Bankruptcy. 549 U. S. 365 (2007). Since there was a pattern of fraud and eligibility issues, conversion could not be allowed in *Marrama*. Where there is no allegation of fraud, and the Debtor qualifies for conversion to the chapter it requests, the Court should grant the Motion. *Finney v. Smith*, 992 F.2d 43 (4th Cir. 1993). *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). Several courts have concluded that conversion can only be denied in exceptional circumstances. *In re Krishnaya*, 263 B.R. 63 (S.D.N.Y. 2001); *In re Copper*, 426 F.3d 810 (6th Cir. 2005); *In re Calder*, 93 B.R. 739, 740 (Bankr. D. Utah 1988). The existence of extreme circumstances must be established by the party challenging the conversion. *See In re Wampler*, 302 B.R. 601 (Bankr. S.D. Ind. 2003); *Martin*, 880 F.2d 859.

Here, no trustee has been appointed in the Bankruptcy Case, nor has any party in interest including Petitioning Creditors sought the appointment of a trustee. The Debtor has not misled any creditors or parties in interest regarding the availability or extent of assets, as was the case in *Marrama*. The Debtor has never filed a Bankruptcy Case before. The Debtor is eligible to be a Chapter 11 Debtor. For all the foregoing reasons, the Motion should be granted.

**B.    The Case Should Also Be Converted To Chapter 11 Because Conversion Is In The Best Interests Of All Creditors**

The Debtor seeks to convert its case to Chapter 11 in order to use bankruptcy as a forum to resolve its litigation in an expeditious fashion and reorganize its Real Property. In evaluating a Motion to convert from Chapter 7 to Chapter 11, the interests of the unsecured creditors can also be considered. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S. Ct. 311, 102 L.Ed.2d 330 (1988). Since conversion would benefit unsecured creditors in this case, there is an additional grounds to convert the case to Chapter 11 besides the Debtor's one time absolute right that exists. Here, a

conversion to Chapter 11 gives all unsecured constituencies the best possibility of recovery. For this reason, the Motion should be granted.

### C. The Automatic Stay Should Continue As To All Creditors

The Debtor requests that the Court not lift the automatic stay and that the say remain in effect as to all creditors including the Secured Creditor. The automatic stay is one of the most fundamental protections provided to the debtor under the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503, 106 S. Ct. 755 (1986) *reh'g denied* 475 U.S. 1090, 106 S. Ct. 1482. The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982).

In determining whether to grant relief from the automatic stay pursuant to 11 U.S.C. Section 362(d)(1), the Court needs to engage in an extensive, fact intensive balancing test, examining the totality of circumstances. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1986); *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re Laguna Assocs. Ltd.*, 30 F.3d 734, 737 (7th Cir. 1994).

Unless the quantum of proof on the issue of cause under Section 362(d)(1) reaches a certain threshold, no *prima facie* case is established and the debtor is not required to introduce evidence to meet and rebut the *prima facie* case. *In re Gould*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2009). A Secured Creditor cannot just present evidence that it holds a validly perfected security interest and that it is owed a debt, but must set forth certain evidence to meet each element of the particular provision it seeks relief under. *In re Kane*, 27 B.R. 902, 905 (Bank. M.D. Pa. 1983); *In re Curtis*, 40 B.R. 795, 798-99 (Bank. D. Utah 1984); *In re Stranahan Gear Co., Inc.*, 67 B.R. 834 (Bank. E.D. Pa. 1986).

The filing of a Petition on the eve of foreclosure is not per se bad faith. Several courts have held that filing a bankruptcy court on the eve of a foreclosure would not be dismissed if the Debtor had any potential to reorganize. *In re Clinton Fields, Inc.*, 168 B.R. 265 (Bankr. N.D. Ga. 1994); *In*

*re Con Am Grandview Associates, L.P.*, 179 B.R. 29 (Bankr. S.D.N.Y. 1995); *In re Kasdorf*, 64 B.R. 294 (D. Col. 1986).

Here, Secured Creditor has provided no admissible evidence of bad faith or collusion on the Debtor's part in the bankruptcy filing. The filing of a bankruptcy in and of itself on the eve of a foreclosure is not an event of bad faith, and if the Debtor has legitimate purpose of remaining in bankruptcy, the Court should allow the Debtor to reorganize. Here, the Debtor intends to prosecute valuable litigation and reorganize Real Property. The Debtor's interests happen to be aligned with the Petitioning Creditors, at least insofar as the notion that a Bankruptcy is necessary to realize value for the Debtor's constituencies. For the following reasons, the automatic stay must remain in effect.

### C.    Secured Creditor Is Also Not Entitled To Relief From Stay Because Its Liens Are Subject To A Bona Fide Dispute

In relief from stay proceedings, Bankruptcy Courts should consider affirmative defenses and counterclaims that directly involve the validity of Secured Creditor's security interest and/or the debtor's equity in the property. "When a debtor's affirmative defenses and counterclaims directly involve the question of the debtor's equity, they should be heard in the stay proceeding." *In re Bialac*, 694 F.2d 625, 627 (9th Cir. 1982); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 327 fn. 64 (Bankr S.D.N.Y. 2001) (same); *In re Poughkeeepsie Hotel Assoc. Joint Ventury*, 132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991).

It is well-settled that when the court is made aware at a stay relief hearing that fundamental questions exist over the extent, validity, or priority of a Secured Creditor's security interest it is appropriate to deny relief until such issues can be resolved in an adversary proceeding. [citing cases]. *In re Topgallant Lines, Inc.*, 1993 WL 13004125, *2 (Bankr. S.D. Ga. 1993).

More specifically, courts have held that they must consider whether the moving creditor's secured claim is subject to equitable subordination, as an affirmative defense to motion for relief from the automatic stay. *See, .e.g., Poughkeepsie Hotel*, 132 B.R. at 292-93; *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 28 (Bankr. D. Conn. 2000); *See also In re Springs Hospitality*, 2006 WL 2458679, 9 (Bankr. D. Colo. 2006). The rational for allowing affirmative defenses of equitable subordination to a motion for relief is based on the fact that "[u]pon commencement of the

1   Bankruptcy case the debtor and its unsecured creditor's have a "variety of protections under the
2   Bankruptcy Code to capture any equity in the property, subject to providing adequate protection to
3   the secured creditor. These protections include ... Code Section 510(c)." *Poughkeepsie Hotel*, 132
4   B.R. at 293. "While adjudication of the merits of potential counterclaims and affirmative defenses
5   could seriously infringe upon the creditor's right to an expedited hearing it is perfectly appropriate to
6   acknowledge the presence of such claims in determining that creditor's equitable right to relief." *Id.*
7   at 293. Other courts have concluded that there are circumstances where a secured creditor is not
8   entitled to adequate protection pending a determination of the validity of its lien. *In re Waste*
9   *Alternatives, Inc.*, 171 B.R. 147, 148 (Bankr. M.D. Fla. 1994); *Mr. R's Prepared Foods*, 251 B.R. at
10  28 (Bankr. D.Conn. 2000); *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837 (E.D.N.Y. 1995).
11      Here, the validity of Secured Creditor's claims are subject to a bona fide dispute as set forth
12  in an action to be filed in state court. Due to Secured Creditor's pre-petition inequitable conduct, the
13  Debtor's estate is entitled to subordinate the Secured Creditor claims and transfer Secured Creditor's
14  liens to the Debtor's estate. Once the estate prevails in equitably subordinating the Secured Creditor
15  liens through the proposed lawsuit, there will be substantial equity in the Property, which will be
16  made available for the benefit of the Debtor's estate and the Debtor.

17  **D.     Secured Creditor's Claims are Subject to Equitable Subordination and The Liens**
18           **Securing Those Claims Should Be Transferred To The Estate**

19      It is well settled that "bankruptcy court exercise broad equitable power to subordinate
20  claims." *See In re Universal Farming Industries*, 873 F.2d 1334, 1337 (9th Cir. 1989). Pursuant to
21  Section 510(c), the bankruptcy court may "(1) under principals of equitable subordination,
22  subordinate for purposes of distributional or part of an allowed claim to all or part of another
23  allowed claim...; or (20 order than any lien securing such a subordinate claim be transferred to the
24  estate. 11 U.S.C. Section 510(c). Section 510(c)(2) provides that the Court may order than any lien
25  securing such a subordinate claim be transferred to the estate." A lien transferred pursuant to 11
26  US.C. Section 510(c)(2), is preserved for the benefit of the estate, such that the debtor steps in the
27  shoes of the subordinated creditor, thereby preventing junior lienholders form improving their
28  position.

BLAKE LINDEMANN
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

Equitable subordination generally requires the three following findings: "(1) that the claimants engaged in some type of inequitable conduct; (2) that the misconduct injured creditors or conferred unfair advantage on the claimant; and (3) that the subordination would not be inconsistent with the Bankruptcy Code." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1007 (9th Cir. 2006). The inequitable conduct justifying equitable subordination need not arise from the acquisition or assertion of the claim sought to be subordinated. *See, In re Pacific Exp.*, 69 B.R. 112, 116 (9th Cir. B.A.P. 1986).

"[T]here are generally three situations pursuant to which courts will apply the doctrine: when a fiduciary of the debtor misuses his position to the disadvantage of others; when a third party dominates or controls the debtor to the disadvantage of others; or when a third party defrauds other creditors." *In re First Alliance Mortg. Co.*, 298 B.R. 652, 667 (C.D. Cal. 2003) *citing In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1360 (1st Cir. 1992). Bankruptcy courts have recognized that subordination is proper where a lender exercises control over the borrower to the detriment of other creditors or to gain an unfair advantage. *See e.g., In re American Lumber Co.*, 5 B.R. 470, 478 (D.C. Minn. 1980); *In re T.E. Mercer Trucking Co.*, 16 B.R. 176, 189-90 (Bankr. Tex. 1981).

1. <u>Secured Creditor's Inequitable Conduct</u>

The standard for inequitable conduct may differ depending on whether the creditor is an "insider" of the debtor. Where the claimant is an insider of the debtor, the party requesting equitable subordination is subject to a lesser burden of proof and pleading, as the claimant's actions will be subject to rigorous scrutiny. *Stoumbos v. Kilimnik*, 988 F.2d 949, 959 (9th Cir. 1993).

> When the trustee seeks to subordinate the claim of a creditor the trustee must present evidence of the creditor's unfair conduct. If the trustee meets this burden, 'the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated.

*Stoumbos*, 988 F.2d at 958; *see also In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292, 1301 (10th Cir. 2004) ("Where the claimant is an insider or a fiduciary, the party seeking subordination need only show some unfair conduct, and a degree of culpability, on the part of the insider.")

Even where a creditor is not deemed an insider, its claim may still be equitably subordinated where it engaged in "gross and egregious conduct, tantamount to fraud, misrepresentation, overreaching, spoliation or conduct involving moral turpitude." *In re First Alliance Mortgage Co.*, 298 B.R. 652, 668 (C.D. Cal. 2003); *but see In re 80 Nassau Associates*, 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994) ("In commercial cases, the proponent must demonstrate a substantial breach of contract and advantage-taking by the creditor"; fraud or misrepresentation need only be proven in the absence of contractual breach).

Bankruptcy Code section 101(31) lists certain specific categories of insiders, but the list is not exclusive. Indeed, "[b]ankruptcy law recognizes two types of insiders: those specifically identified in Section 101(31), commonly referred to as 'per se' insiders, and those not so identified but who have a sufficiently close relationship with the debtor to be insiders, commonly referred to as 'non-statutory' insiders." *In re Fortune Natural Resources Corp.*, 350 B.R. 693, 695 (Bankr. E.D. La. 2006) *citing In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626, 631 (9th Cir. B.A.P. 2004).

Here, Secured Creditor induced the Debtor and its investors to purchase Real Property and Business in a "seller finance to own" scheme. Under this scheme, Property was sold with expectation by both parties that environmental issues of Real Property would be remediated by seller/Secured Creditor. This never occurred. Since Real Property was not cleaned up, the Debtor was unable to refinance or sell Real Property. When payments were not made, the Secured Creditor continued its scheme to implement its scheme by demanding interest payments. For all these reasons, the Debtor maintains it would not be appropriate to grant relief from the automatic stay.

2. <u>Equitable Subordination is Not Inconsistent with the Bankruptcy Code</u>

The application of equitable subordination to Secured Creditor's claims would not run counter to the principles and requirements of the Bankruptcy Code. As the Supreme Court has pointedly held in *United States v. Noland*, 517 U.S. 535 (1996), "the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." *Id.* at 536. *See also Reorganized CF&I Fabricators of Utah*, 518 U.S. 213 (1996).

Specifically, subordination cannot amount to a categorical reordering of a statutory priorities without a finding of inequitable conduct.

Here, the equitable subordination of Secured Creditor's claims is not inconsistent with the Bankruptcy Code. *See In re Mahan*, 373 B.R. 177, 185 (Bankr. M.D. Fla. 2007). As demonstrated above, Secured Creditor's' liens should be subordinated and the liens securing Secured Creditor's claims should be transferred to the Debtor's estate. Until there is an adjudication as to the extent and validity of Secured Creditor's liens, Secured Creditor should not be entitled to relief from the automatic stay.

Dated: April 4, 2011

Blake Lindemann

*Attorney For Alleged Debtor 1019 South Central Associates LTD*

# DECLARATION OF MANUEL MEZA

I, Manuel Meza, declare as follows:

1. I am over the age of eighteen and a resident of Los Angeles County. I am the president of the General partner of the above captioned debtor (the "Debtor") and the individual representing the interests of the Debtor in the above captioned Chapter 11 case.

2. I am readily familiar with the Debtor's property, its business affairs and financial condition and the facts and circumstances relating to the key operational and strategic issues that will need to be addressed in the context of this case. I have personal knowledge of the facts set forth herein and, if called as a witness, I would competently testify with respect thereto.

3. On February 22, 2011, an involuntary Chapter 7 petition (the "Bankruptcy Case") was commenced against 1019 South Central Associates, LTD (the "Debtor") by Vicente Garcia, Fernando Ruiz, and Toshio Kato (collectively the "Petitioning Creditors"). No Trustee has been appointed, and no motion to appoint a Trustee has been filed.

4. The Debtor has retained counsel a short time ago, and counsel is getting up to speed concerning the matter. The Debtor apologizes for the late nature of this Motion to Convert. The alternative is dismissal and the commencement of a voluntary petition by the Debtor. The Debtor has only recently learned of its options and alternatives concerning the matter.

5. The purpose of the Debtor's reorganization will be to value liens attached to Debtor's real property located at 1716-1724 Naud Street, Los Angeles, CA 90012 ("Real Property"), pay secured claims based on what the Bankruptcy Code will allow, and make a distribution to unsecured creditors pursuant to a Chapter 11 Plan. In addition, the Debtor will pursue its litigation claims, likely in state Court.

6. Because secured creditors and unsecured creditors will receive a distribution pursuant to the Debtor's reorganization plan, converting the case is in the best interests of creditors. Because the Debtor will be able to retain property it has invested hundreds of thousands of dollars inand pursue litigation the conversion of this Chapter 7 case is in the best interests of the Debtor. Accordingly, converting this case to Chapter 11 is fair, equitable, and in the best interests of the estate. The Debtor has never commenced a voluntary petition.

7.    The Debtor also maintains the automatic stay should continue as to Real Property. Petitioning Creditors have informed the Debtor that their basis for the filing was that if the Real Property was sold at a non-judicial foreclosure sale, no constituencies in this case would recover. The filing was not part of a scheme. A bankruptcy in this instance happens to benefit both the Debtor and Petitioning Creditors here.

*[Balance of Page Left Blank – Signature Page To Follow]*

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED this day of APRIL 4, 2011, at Beverly Hills, CA

1019 SOUTH CENTRAL ASSOCIATES, LTD,

By: Manuel Meza

| In re:<br>1019 South Central Associates LTD<br>Debtor(s). | CHAPTER: **7**<br>CASE NUMBER: **2:11-bk-17360-BB** |
|---|---|

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210. The foregoing document described as: **NOTICE OF MOTION AND MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 11 PURSUANT TO 11 U.S.C. SECTION 706(a) AND REQUEST TO CONTINUE THE AUTOMATIC STAY AS TO REAL PROPERTY; DECLARATION OF MANUEL MEZA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") –**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 4, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Blake Lindemann on behalf of Alleged
blindemann@llgbankruptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On **April 4, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
SEE ATTACHED LIST – ALL SERVED VIA FIRST CLASS MAIL

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each** person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 4, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
VIA PERSONAL DELIVERY
Hon. Sheri Bluebond
255 E. Temple St., Suite 1482
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 4, 2011 | Justin Ross | /s/ Justin Ross |
|---|---|---|
| | Name | Signature |

BLAKE LINDEMANN
433 N. CAMDEN DRIVE, 4TH FLOOR
BEVERLY HILLS, CA 90210

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0973-2<br>Case 2:11-bk-17360-BB<br>Central District Of California<br>Los Angeles<br>Mon Apr  4 16:59:02 PDT 2011 | 1019 South Central Associates, LTD.<br>2664 Lacey Street<br>Los Angeles, CA 90031-1836 | (p)EMPLOYMENT DEVELOPMENT DEPARTMENT<br>STATE OF CALIFORNIA<br>BENEFIT OVERPAYMENT COLLECTION SECTIO<br>MIC 91<br>PO BOX 826218<br>SACRAMENTO CA 94230-6218 |
| Franchise Tax Board<br>ATTN: Bankruptcy<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Los Angeles City Clerk<br>P.O. Box 53200<br>Los Angeles, CA 90053-0200 | Los Angeles Division<br>255 East Temple Street,<br>Los Angeles, CA 90012-3332 |
| Fernando Ruiz<br>1697 W Belvue St<br>San Bernardino, CA 92410 | Toshio Kato<br>2555 Main St #208<br>Irvine, CA 92614-3201 | United States Trustee (LA)<br>725 S Figueroa St., 26th Floor<br>Los Angeles, CA 90017-5524 |
| Vicente Garcia<br>3416 S Mckinley Ave<br>Los Angeles, CA 90011-2822 | David. L. Brady and Robert Karns, M.D. Co-Tr<br>c/o McGuireWoods LLP<br>1800 Century Park East, 8th Floor<br>Los Angeles, CA 90067-1501 | Jodie M. Grotins<br>McGuireWoods LLP<br>1800 Century Park East<br>8th Floor<br>Los Angeles, CA 90067-1501 |

16